UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ARMANDO M. FERNANDEZ PUIG, | ) | Case No. EDCV 06-364-JTL |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security, | ) | |
| Defendant. | ) | |

On April 5, 2006, Armando M. Fernandez Puig ("plaintiff") filed a Complaint seeking review of the Commissioner's denial of his application for disability insurance benefits and supplemental security income. On May 4, 2006, the parties filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. Thereafter, on October 13, 2006, defendant filed an Answer to the Complaint. On December 18, 2006, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///

///

**BACKGROUND**

On February 26, 2004, plaintiff filed an application for disability insurance benefits and supplemental security income. (Administrative Record ["AR"] at 61-63).   Plaintiff alleged that beginning on June 1, 1992, he was unable to work because he suffered from the following impairments: spinal injury, spinal column pain, neck injury, headaches, numbness of fingers, and left hand bone injury.   (AR at 13, 29, 35).   The Commissioner denied plaintiff's application for benefits both initially and upon reconsideration.   (AR at 29-33, 35-39).

On August 27, 2004, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").   (AR at 40).   On August 24, 2005, the ALJ conducted a hearing in San Bernardino, California.   (AR at 209-48).   Plaintiff appeared at the hearing without counsel and testified.   (AR at 213-36).   Lowell Sparks, M.D., a medical expert, and Naida Sprado, a witness, also testified.   (AR at 239-41, 241-43).   Joseph Mooney, a vocational expert, was present at the hearing, but did not testify.   (See AR at 209-48).

On December 29, 2005, the ALJ issued a decision denying benefits.   (AR at 10-23).   In his decision, the ALJ concluded that plaintiff suffered from the following severe impairments: low back pain with possible intermittent left lumbar radiculopathy, biomechanical neck pain, and right third digital neuropathy.   (AR at 16).   The ALJ, however, determined that these impairments did not meet or equal any of the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1.   (AR at 16-17).   The ALJ further found that plaintiff retained the residual functional capacity to perform work at the medium exertional level,

2

1  including his past relevant work as an electronics test engineer and

2  electronics research engineer. (AR at 17, 22). Ultimately, the ALJ

3  found that plaintiff was not disabled pursuant to the Social Security

4  Act. (AR at 23).

5     Subsequently, on February 15, 2006, plaintiff filed a request

6  with the Appeals Council for review of the ALJ's decision. (AR at 9).

7  On March 20, 2006, the Appeals Council affirmed the ALJ's decision.

8  (AR at 5-7).

9

10                    **PLAINTIFF'S CONTENTIONS**

11     Plaintiff makes the following claims in the parties' Joint

12  Stipulation:

13     1.   The ALJ erroneously concluded that plaintiff's mental

14  impairments were non-severe.

15     2.   The ALJ failed to develop the record with regard to

16  plaintiff's mental impairments.

17     3.   The ALJ failed to consider a lay witness's testimony

18  regarding how plaintiff's severe impairments limited his ability to

19  function.

20     4.   The ALJ erred by not obtaining testimony from a vocational

21  expert.

22

23                     **STANDARD OF REVIEW**

24     The Court reviews the ALJ's decision under 42 U.S.C. § 405(g) to

25  determine whether the ALJ's findings are supported by substantial

26  evidence and whether the proper legal standards were applied. DeLorme

27  v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence

28  means "more than a mere scintilla" but less than a preponderance.

Richardson v. Perales, 402 U.S. 389, 401 (1971); Desrosiers v. Secretary of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the ALJ's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

**DISCUSSION**

**A.   The Sequential Evaluation**

The Commissioner has established a five-step sequential process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920 (1991); Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). At step one, disability benefits are denied if the Commissioner determines that the claimant is engaged in substantial gainful activity. Bowen, 482 U.S. at 140. At step two, the Commissioner evaluates whether the claimant has a medically severe impairment which significantly limits his physical or mental ability to do basic work activities. Id. at 140-41. Step three requires a consideration of whether the claimant's impairment is equivalent to one of a number of listed impairments that are so severe as to preclude substantial gainful activity. Id. at 141. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Id. If the impairment is not one that is conclusively presumed to be disabling, step four of the evaluation

determines whether the impairment prevents the claimant from performing work he has performed in the past. <u>Bowen</u>, 482 U.S. at 141. If the claimant cannot perform his past work, the fifth and final step determines whether he is able to perform other work in the national economy in light of his age, education and work experience. <u>Id.</u> at 142. The claimant is entitled to disability benefits only if he is not able to perform such work. <u>Id.</u>

**B.   The ALJ Failed to Sufficiently Develop the Record Regarding Plaintiff's Medical Impairments**

Plaintiff contends that the ALJ failed to develop the record regarding his depression and mental condition. (Jt. Stip. at 5-7). As discussed below, the Court agrees.

An ALJ in a social security case has an independent "'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" <u>Smolen v. Chater</u>, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting <u>Brown v. Heckler</u>, 713 F.2d 441, 443 (9th Cir. 1983)). This duty extends to the represented as well as to the unrepresented claimant. <u>Id.</u> When the claimant is unrepresented, however, as in this case (<u>see</u> AR at 211-12), the ALJ must be especially diligent in exploring for all the relevant facts. <u>Cox v. Califano</u>, 587 F.2d 988, 991 (9th Cir. 1978). The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect his own interests. <u>Higbee v. Sullivan</u>, 975 F.2d 558, 562 (9th Cir. 1992); <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 849 (9th Cir. 1991). Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate

1   inquiry." Smolen, 80 F.3d at 1288; Armstrong v. Commissioner of Soc.

2   Sec. Admin., 160 F.3d 587, 590 (9th Cir. 1998).  The ALJ may discharge

3   this duty in several ways, including: subpoenaing the claimant's

4   physicians, submitting questions to the claimant's physicians,

5   continuing the hearing, or keeping the record open after the hearing

6   to allow supplementation of the record.  Tidwell v. Apfel, 161 F.3d

7   599, 601-02 (9th Cir. 1999); Smolen, 80 F.3d at 1288.

8        In this case, plaintiff introduced evidence that he might be

9   suffering from a mental condition that affected his ability to work.

10  Specifically, Leon Wallace, M.D., a psychiatrist, saw plaintiff on May

11  26, 2005, and diagnosed him with severe depression.  (AR at 148, 171).

12  On June 21 and July 5, 2005, Donald Kim, M.D., treated plaintiff,

13  noted that he "appear[ed] very depressed," and diagnosed him with

14  "[a]nxiety/depression by history."  (AR at 174-80).  Additionally, at

15  the hearing, Lowell Sparks, M.D., the medical expert, testified that

16  plaintiff suffered from "severe depression." (AR at 244).  Therefore,

17  Dr. Sparks recommended that the ALJ obtain a psychological evaluation.

18  Dr. Sparks specifically recommended a psychological evaluation, as

19  opposed to a psychiatric evaluation, because a psychological

20  evaluation requires a "battery of tests," and, therefore, "would give

21  more information."  (AR at 245).

22       After the hearing, on October 6, 2005, Linda M. Smith, M.D., a

23  psychiatrist, conducted a "complete psychiatric evaluation" of

24  plaintiff.  (AR at 183).  Dr. Smith assessed plaintiff with a Global

25

26

27

28

Assessment of Functioning ("GAF") score of 64,[1] and diagnosed "depressive disorder not otherwise specified." (AR at 187). Dr. Smith concluded that plaintiff's mental condition did not impair his ability to understand, remember or complete simple commands; very mildly impaired his ability to understand, remember or complete complex commands due to some possible very mild problems with memory; mildly impaired his ability to interact appropriately with supervisors, co-workers, or the public due to some possible interference from depressed mood and occasional tearfulness; did not impair his ability to comply with job rules such as safety and attendance; did not impair his ability to respond to change in the normal workplace setting; and did not impair his ability to maintain persistence and pace in a normal workplace setting. (AR at 188).

Ultimately, the ALJ determined that plaintiff's alleged depression did not constitute a severe impairment. (AR at 16). In so finding, the ALJ relied heavily on Dr. Smith's report. The ALJ rejected Dr. Wallace's diagnosis of severe depression on the following ground: "Dr. Wallace... has apparently not provided any treatment for the claimant, as evidenced by his request for pre-authorization for psychotherapy treatment made on that same date... and therefore has little actual knowledge of the claimant's mental condition.

---

[1] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Vargas v. Lambert, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). A GAF score between 61 and 70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or social functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships)." See Diagnostic and Statistical Manual of Mental Disorders, 34 (4th. ed, rev. 2000).

1    Furthermore, there is nothing in the evidence to show that the
2    claimant's depression has more than a minimal effect on the claimant's
3    ability to perform basic work activities.   As the claimant has not
4    received any treatment for his depression, there are no treating notes
5    to review."  (AR at 16).

6        The Court finds that the ALJ erred in concluding that plaintiff's
7    mental impairment was not severe because the ALJ failed to adequately
8    develop the record before reaching this decision.   As noted above,
9    plaintiff was unrepresented at the hearing.  (AR at 211-12).   Thus,
10   the ALJ's duty to develop the record in this case was "heightened".
11   See, e.g., Cox, 587 F.2d at 991; Higbee, 975 F.2d at 562; DeLorme, 924
12   F.2d at 849.   The ALJ, however, failed to satisfy that duty in two
13   respects.

14       First, contrary to the medical expert Dr. Spark's recommendation,
15   the ALJ obtained only a consultative psychiatric evaluation.  However,
16   Dr. Spark specifically recommended a psychological evaluation, as
17   opposed to a psychiatric evaluation.   Dr. Spark explained that a
18   psychological evaluation requires a "battery of tests," and,
19   therefore, "would give more information."  (AR at 245).   The ALJ
20   should not have ignored Dr. Spark's specific recommendation that a
21   psychological evaluation be obtained.

22       Second, the ALJ failed to seek additional information or
23   clarification from Dr. Wallace before rejecting his opinion.  As noted
24   above, the ALJ gave the following reasons for rejecting Dr. Wallace's
25   opinion: (1) Dr. Wallace did not provide any treatment for plaintiff;
26   and (2) plaintiff had not received treatment for his depression, and,
27   thus, the record contained no evidence that his depression was severe.
28   (AR at 16).   These reasons, however, are unpersuasive.   The record

1   indicates that, in fact, Dr. Wallace treated plaintiff on at least one

2   occasion.[2] (See AR at 148).  Furthermore, it appears that plaintiff

3   did not obtain treatment for his depression only because he could not

4   afford it.  (See AR at 181, 220-21).  This was an acceptable reason

5   for not seeking treatment.  See, e.g., Smolen, 80 F.3d at 1284

6   (evidence of good reason existed where claimant had no insurance and

7   could not afford treatment).

8       If the ALJ thought that Dr. Wallace's report did not contain all

9   the necessary information, or was not based on objective evidence, the

10  ALJ should have attempted to obtain additional evidence or

11  clarification from Dr. Wallace.  See 20 C.F.R. 404.1512(e)(1) ("We

12  will first recontact your treating physician or psychologist or other

13  medical source to determine whether the additional information we need

14  is readily available.  We will seek additional evidence or

15  clarification from your medical source when the report from your

16  medical source contains a conflict or ambiguity that must be resolved,

17  the report does not contain all the necessary information, or does not

18  appear to be based on medically acceptable clinical and laboratory

19  diagnostic techniques.").

20      In sum, the ALJ erred in failing to develop the record regarding

21  plaintiff's mental impairments.

22  ///

23  ///

24  ///

25  ///

26

27      [2]  Indeed, the consultative examiner, Dr. Smith, on whose
    opinion the ALJ relied, only saw plaintiff on one occasion as
28  well.  (See AR at 183-88).

9

**C.    The ALJ Failed to Properly Consider Naida Sprado's Testimony**

Next, Plaintiff contends that the ALJ failed to properly discuss the testimony of his neighbor, Naida Sprado. (Jt. Stip. at 7-8).  As discussed below, the Court agrees.

"[T]estimony from lay witnesses who see the claimant ever day is of particular value." Smolen, 80 F.3d at 1289.  The Commissioner's Rulings require the ALJ to consider lay witness testimony in certain types of cases.  SSR 88-13 states that where a claimant alleges pain or other symptoms that are "not supported by objective medical evidence in the file, the adjudicator shall obtain detailed descriptions of daily activities by directing specific inquiries about the pain and its effects to... third parties who would be likely to have such knowledge." SSR 88-13.  The ruling then requires the ALJ to give "full consideration" to such evidence. Id.  Having been directed to consider the testimony of lay witnesses in determining a claimant's disability, the ALJ can reject the testimony of lay witnesses only if he gives reasons germane to each witness whose testimony he rejects. Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); Smolen, 80 F.3d at 1288.

In this case, plaintiff's alleged disability is based on severe pain.  His medical records are sparse and do not provide adequate documentation of those symptoms. (See AR at 17-22).  Under SSR 88-13, the ALJ therefore had to consider the testimony of plaintiff's witnesses regarding his symptoms.

At the hearing, Ms. Sprado testified regarding the following: (1) plaintiff loses his balance and "fall[s] down a lot," (2) he loses his train of thought "[a]lmost like when older people have problems with Alzheimer['s] and things like that," and (3) he "seems to have a lot

1 of pain in the lower lumbar... and through his shoulder." (AR at 242-
2 43).

3     In his decision denying benefits, the ALJ noted Ms. Sprado's
4 testimony regarding plaintiff's alleged loss of balance.   The ALJ
5 rejected that testimony because it was "not borne out by the medical
6 records." (AR at 21).  But the rejection of Ms. Sprado's testimony on
7 this ground violates SSR 88-13, which directs the ALJ to consider the
8 testimony of lay witnesses where the claimant's alleged symptoms are
9 unsupported by his medical records. See SSR 88-13; Smolen, 80 F.3d at
10 1289 ("The rejection of the testimony of Smolen's family members
11 because Smolen's medical records did not corroborate her fatigue and
12 pain violates SSR 88-13, which directs the ALJ to consider the
13 testimony of lay witnesses where the claimant's alleged symptoms are
14 unsupported by her medical records.") (emphasis in original).
15 Moreover, the ALJ failed to discuss Ms. Sprado's testimony regarding
16 plaintiff's other alleged symptoms, specifically, plaintiff's memory
17 loss and pain.

18     Accordingly, the Court finds that the ALJ failed to properly
19 consider Ms. Sprado's testimony.

20

21 **D.   Remand Is Required to Remedy Defects in the ALJ's Decision**

22     The choice of whether to reverse and remand for further
23 administrative proceedings, or to reverse and simply award benefits,
24 is within the discretion of the Court.  McAlister v. Sullivan, 888
25 F.2d 599, 603 (9th Cir. 1989).  Remand is appropriate where additional
26 proceedings would remedy the defects in the ALJ's decision, and where
27 the record should be developed more fully.   Id.; Rodriguez v. Bowen,
28 876 F.2d 759, 763 (9th Cir. 1990).   An award of benefits is

11

1   appropriate where no useful purpose would be served by further
2   administrative proceedings, see Gamble v. Chater, 68 F.3d 319, 322-23
3   (9th Cir. 1995), where the record has been fully developed, see
4   Schneider v. Commissioner of the Social Security Administration, 223
5   F.3d 968, 976 (9th Cir. 2000); Ramirez v. Shalala, 8 F.3d 1449, 1455
6   (9th Cir. 1993), or where remand would unnecessarily delay the receipt
7   of benefits.  See Smolen, 80 F.3d at 1292.

8        For the foregoing reasons, the Court finds remand appropriate.
9   On remand, the ALJ must develop the record fully and fairly with
10  respect to plaintiff's possible mental impairments.  Additionally, the
11  ALJ must consider the testimony of plaintiff's witnesses regarding his
12  symptoms.[3]

13  ///
14  ///
15  ///
16  ///
17  ///
18  ///
19  ///
20  ///

21

22

23       [3] In the Joint Stipulation, plaintiff also contends that the
    ALJ erroneously concluded that his mental impairments were non-
    severe, and that the ALJ failed to obtain testimony from a
24  vocational expert.  As explained above, however, the ALJ's errors
    in failing to develop the record and failing to properly consider
25  Ms. Sprado's testimony constitute sufficient reason to remand
    this case.  Moreover, depending on the outcome of the proceedings
26  on remand, the ALJ will have an opportunity to address
    plaintiff's other arguments again.  In any event, the ALJ should
27  consider all the issues raised by plaintiff in the Joint
    Stipulation when determining the merits of plaintiff's case on
28  remand.

**ORDER**

The Court, therefore, VACATES the decision of the Commissioner of Social Security Administration and REMANDS the case for further administrative proceedings consistent with the Memorandum Opinion and Order.

DATED:   January 24, 2007

                                        _____/s/_____
                                        JENNIFER T. LUM
                                        UNITED STATES MAGISTRATE JUDGE